```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  1/9/2024

EXIST, INC.,

       Plaintiff,

  -against-

TOKIO MARINE AMERICA INSURANCE COMPANY,

       Defendant.

22 Civ. 1679 (AT)

**ORDER**

ANALISA TORRES, District Judge:

  Plaintiff, Exist, Inc. ("Exist"), an apparel wholesaler, brings this action against Defendant, Tokio Marine America Insurance Company ("Tokio Marine"), its insurer, arising from Tokio Marine's alleged mishandling of the claims assessment process. Compl. ¶¶ 1–6, ECF 1. The parties dispute whether Exist is entitled to a jury trial. For the reasons stated below, the Court finds that it is.

## BACKGROUND

### I. Relevant Facts

  Exist and Tokio Marine entered into a "Marine Cargo Policy" insurance agreement (the "Policy"), ECF No. 1-1, in February 2019. Compl. ¶ 12. Under the Policy, Tokio Marine insured Exist's goods—apparel, sportswear, and textiles—"against all risks of physical loss or damage from any external cause" up to $5 million per occurrence, subject to certain exclusions. Policy at 3, 5.[1] The Policy covered losses incurred during ocean cargo transport, domestic inland transit, trade disruption, and the storage of Exist's goods in specified warehouses. *Id.* at 3.

---

[1] Citations to the Policy are to the page numbers at ECF 1-1.

In December 2019, a flood at one of Exist's warehouses in Fort Lauderdale, Florida damaged "thousands of articles of inventory . . . beyond repair." Compl. ¶¶ 23–24. Tokio Marine sent an adjuster to assess the damage and hired another company to inventory the damaged goods. *Id.* ¶ 26. Exist alleges that Tokio Marine's agents inaccurately calculated the damaged goods, resulting "in an underpayment . . . in the amount of $1,607,917.31." *Id.* ¶ 37, *see id.* ¶¶ 25–34. Exist also claims that although Tokio Marine's agents were instructed to destroy and dispose of the damaged goods, the damaged items—bearing Exist's name—were sold at large-scale flea markets near its warehouse. *Id.* ¶¶ 45–54.

Exist asserts eight causes of action against Tokio Marine: three contract claims (breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment,[2] *id.* ¶¶ 57–67, 92–104), and five claims sounding in tort (conversion, fraud, two claims of civil conspiracy, and a violation of New York General Business Law § 349, *id.* ¶¶ 68–91, 105–23).

II. The Parties' Jury Trial Dispute

In its Complaint, Exist invokes the Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a)(1), *id.* ¶ 9, and "demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure," *id.* at 21. Tokio Marine argues, however, that the Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1), thereby requiring a "trial by the Court, without a jury." Answer ¶¶ 125, 141, ECF No. 13.

The Policy contains a choice-of-law provision, which provides that the

---

[2] Although unjust enrichment is a quasi-contract claim, *see Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011), Second Circuit precedent dictates that the Court treat it as a contract claim for purposes of choice-of-law analysis. *See, e.g.*, *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 134 (2d Cir. 1998) (determining that admiralty jurisdiction did not apply to unjust enrichment action because Plaintiff failed to "show[] that its contractual services involved maritime commerce"); *Peninsular & Oriental Steam Navigation Co. v. Overseas Oil Carriers, Inc.*, 553 F.2d 830, 835 (2d Cir. 1977) ("[Q]uasi-contractual claims may be considered by the federal courts in admiralty if they arise out of maritime contracts.").

> [P]olicy and its endorsement(s) is a contract of marine insurance protecting against marine risks and has been applied for, priced and underwritten as such, and the law applicable to any interpretation of this policy and the rights and obligations of the Company and assured hereunder shall be US federal common law or, in the absence of US federal maritime common law, the laws of the State of New York, irrespective of any principles of choice of law.

Policy at 51.

On March 3, 2023, the Court directed the parties to file letters "outlining their positions on the availability of a jury trial in this matter." ECF No. 26 at 2. Exist argues that the Policy's choice-of-law provision is irrelevant and that applying choice-of-law principles results in a finding that New York law applies to both the contract and tort claims, entitling Exist to a jury trial. ECF No. 27 at 2–4. Tokio Marine disagrees, contending that because the Policy is a maritime agreement containing a choice-of-law provision providing that admiralty law shall apply, a bench trial is required by law. ECF No. 28 at 3–4.

## DISCUSSION

Whether a jury trial is proper in the instant case depends on the law that applies to Exist's claims. Claims governed by admiralty law are not entitled to a jury trial. Fed. R. Civ. P. 38(e), 9(h). The Court finds that Exist's contract law claims are governed by admiralty law, but its tort claims are not. As such, under the Seventh Amendment of the United States Constitution, Exist is entitled to a jury trial for its tort claims. Further, because Exist's contract and tort claims stem from the same alleged conduct, they may be adjudicated in a single jury trial.

I. <u>The Court's Admiralty Jurisdiction</u>

Federal district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1); U.S. Const. art. III, § 2, cl. 1. Even when a plaintiff brings "a suit based upon diversity jurisdiction," as is the case here, the Court "appl[ies]

3

substantive federal maritime law if [it has] admiralty jurisdiction." *Preston v. Frantz*, 11 F.3d 357, 358 (2d Cir. 1993). Thus, admiralty choice-of-law rules apply. *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Henderson*, No. 10 Civ. 8033, 2013 WL 1245451, at *3 & n.9 (S.D.N.Y. Mar. 26, 2013); *see Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 373 (W.D.N.Y. 2018). That said, the Court may have admiralty jurisdiction over some—but not all—of a party's claims.[3] As described below, the admiralty choice-of-law inquiry differs based on the type of claim asserted.

II.     Contract Claims[4]

In determining whether a contract claim falls within the Court's admiralty jurisdiction, a court must inquire "whether the nature of the transaction [at issue] [i]s maritime." *Exxon Corp. v. Central Gulf Lines, Inc.,* 500 U.S. 603, 611 (1991). If the "subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction," federal courts do not have jurisdiction. *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l. Ltd.,* 968 F.2d 196, 200 (2d Cir.1992). Federal admiralty jurisdiction "protect[s] commercial shipping with uniform rules of conduct," *MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 141 (2d Cir. 2011), and includes jurisdiction "over all contracts which

---

[3] Although commonly referred to as "admiralty cases," admiralty jurisdiction attaches only to a party's claims that fall within the Court's admiralty jurisdiction—not an entire case. "Where a person presents a case involving two claims, it is possible that one claim will be resolved according to substantive rules of admiralty and the other claim will be resolved by nonadmiralty rules." Robert Force, Fed. Jud. Ctr., Admiralty and Maritime Law 18 (2d ed. 2013).

[4] For the purposes of this motion, the Court's choice-of-law inquiry is limited to whether Exist is entitled to a jury trial. Deciding the merits of Exist's contract claims would require a separate choice-of-law inquiry. *See Advani Enters., Inc*, 140 F.3d at 162 (2d Cir. 1998) ("Federal maritime law requires [the Court] to determine the scope and validity of the marine insurance policy provisions involved and the consequences of breaching them by using state law. . . . Under federal choice-of-law rules, [a Court] determine[s] which state law to use by ascertaining and valuing points of contact between the transaction [giving rise to the cause of action] and the states or governments whose competing laws are involved." (citation omitted) (cleaned up)).

4

relate to the navigation, business, or commerce of the sea," *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 632 (2d Cir. 2016).  Under the Second Circuit's decision in *Advani Enterprises, Inc. v. Underwriters at Lloyds*, a court sitting in admiralty shall evaluate the following "contacts" when determining the law that applies to a party's contract claims:

> (1) any choice-of-law provision contained in the contract; (2) the place where the contract was negotiated, issued, and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.

140 F.3d 157, 162 (2d Cir. 1998).  Additionally, a choice-of-law clause in a marine insurance contract governs "unless (1) that jurisdiction has no substantial relationship to the parties or the transaction or (2) that jurisdiction's law conflicts with the fundamental purposes of maritime law." *Henderson*, 2013 WL 1245451, at *3.

The *Advani Enterprises* factors weigh in favor of finding that Exist's contract claims are governed by admiralty law.  First, the Policy contains a choice-of-law provision stipulating that the contract is governed by "US federal common law or, in the absence of US federal maritime common law, the laws of the State of New York."  Policy at 51.  This provision is neither without basis nor contrary to admiralty law's policy objective of applying uniform rules to maritime commerce.  Next, contract performance likely occurred in the United States as "[t]he place of performance for an insurance contract is the location where "the premiums [are] billed and a claim on the policy [is] made." *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 135 (2d Cir. 2018).  The parties are U.S. corporations—Tokio Marine is domiciled in New York

5

and Exist in Florida. Compl. ¶¶ 7–8. Finally, the location of the contract's subject matter is primarily on navigable waters. *See generally* Policy.[5]

Further, "[i]t is well established that cases involving marine cargo insurance policies fall within the federal court's admiralty jurisdiction." *Advani Enters., Inc.*, F.3d 157 at 161. Exist argues, however, that the Policy's label as a "Marine Cargo Policy" is "irrelevant to the [choice-of-law] analysis" as the Policy "covers far more than that," including domestic transit. ECF No. 27 at 2–3. Not so. A maritime contract that also covers inland transportation, as is the case here, may be subject to admiralty jurisdiction so long as the maritime aspect of the contract is not "insubstantial." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 27 (2004) (exercising admiralty jurisdiction over contract dispute arising after a train accident involving parties to a marine cargo agreement). As the Supreme Court has observed, "[m]aritime commerce . . . is often inseparable from some land-based obligations. The international transportation industry has moved into a new era, in which cargo owners can contract for transportation across oceans and to inland destinations in a single transaction. The popularity of an efficient choice, to assimilate land legs into international ocean bills of lading, should not render bills for ocean carriage nonmaritime contracts." *Id.* at 15.

For these reasons, Exist's breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment claims are governed by admiralty law, and do not entitle it to a jury trial.

---

[5] The Court does not have sufficient information to address the second *Advani Enterprises* factor, where the contract was "negotiated, issued, and signed." F.3d 157 at 162. But given the substantial evidence that admiralty jurisdiction applies to Exist's contract claims, this is no bar to the Court reaching its conclusion.

III. <u>Tort Claims</u>

By contrast, after applying the admiralty choice-of-law rules for tort claims to this case, the Court holds that admiralty law does not govern Exist's tort claims.

"Admiralty tort jurisdiction is determined quite differently from admiralty contract jurisdiction." *Sirius Ins. Co. (UK) Ltd. v. Collins*, 16 F.3d 34, 37 (2d Cir. 1994). To determine whether the Court has admiralty jurisdiction over a tort claim, the Court must apply the two-part test set forth in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). As articulated by the Second Circuit:

> First, [courts] ask whether the alleged tort meets the location test: that is, whether it occurred on navigable water or was caused by a vessel on navigable water. Second, [courts] ask whether the alleged tort meets both subparts of the connection test: that is, whether the general type of incident involved has a potentially disruptive effect on maritime commerce, and whether the general character of the activity giving rise to the incident bears a substantial relationship to traditional maritime activity. Only if the location test and both subparts of the connection test are met will admiralty tort jurisdiction be proper under 28 U.S.C. § 1333(1).

*In re Petition of Germain*, 824 F.3d 258, 269–70 (2d Cir. 2016); *see Great Lakes Ins. SE v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n Inc.*, No. 19 Civ. 10656, 2020 WL 4547218, at *8–10 (S.D.N.Y. Aug. 6, 2020). If "the tort produces no potential threat to maritime commerce or occurs during activity lacking a substantial relationship to traditional maritime activity," a court may assume that "the objectives of admiralty jurisdiction probably do not require its exercise, even if the location test is satisfied." *Grubart*, 513 U.S. at 545.

As to the first requirement—the location of the tort—the alleged torts did not occur on navigable water. Plaintiff's tort claims are based on Defendant's conduct in New York and that of its agents in Florida. Compl. ¶¶ 8, 23–56. Even assuming the location test could be satisfied, Exist's tort claims fail to satisfy the two-part "connection" test as the alleged tortious conduct—

7

the unauthorized sale of Exist's damaged goods—does not involve "a potentially disruptive effect on maritime commerce." *Germain*, 824 F.3d at 270 (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 248 (2d Cir. 2014)). Nor does "the general character of the activity giving rise to the incident bear[] a substantial relationship to traditional maritime activity." *Id.* As such, admiralty law does not apply to Exist's tort claims.

IV. Jury Trial

Because Exist's tort claims are not subject to federal admiralty jurisdiction, they are not bound by admiralty's tradition of adjudicating matters by bench trial. *In re Great Lakes Dredge & Dock Co.*, 895 F. Supp. 604, 609 (S.D.N.Y.1995). Thus, the Court must next determine if they are covered by the Seventh Amendment's right to a jury trial.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The Supreme Court has long "interpreted the phrase 'Suits at common law' to refer to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). In determining whether a particular action is one at law or equity, courts are instructed to examine "both the nature of the issues involved and the remedy sought." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 565 (1990). A greater focus should be placed on the remedy sought. *Granfinanciera, S.A.*, 492 U.S. at 42. Generally, where a party seeks damages, the action is legal in nature and the Seventh Amendment jury right attaches. *Ross v. Bernhard*, 396 U.S. 531, 533–34 (1970). In contrast, where the relief sought is equitable, such as an injunction or declaratory judgment, the Seventh Amendment will generally not apply.

8

Exist's tort claims concern its legal rights and are, therefore, "[s]uits at common law" under the Seventh Amendment. Exist brings five tort causes of action against Tokio Marine: conversion, fraud, two claims of civil conspiracy, and a violation of New York General Business Law § 349 (deceptive acts and practices). Each of these claims implicate the Seventh Amendment jury right.

First, "it is settled law that conversion is unmistakably an action at law triable to a jury." *Starr Int'l Co. v. Am. Int'l Grp., Inc.*, 623 F. Supp. 2d 497, 501 (S.D.N.Y. 2009) (citing *Ross*, 396 U.S. at 533) (cleaned up). Second, the jury right attaches to common-law fraud claims. *See Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 341 (S.D.N.Y. 2009).[6] Third, Exist's civil conspiracy claims also fall under the Seventh Amendment right. The torts underlying the alleged civil conspiracies—conversion and fraud—are legal in nature and triable by jury. *See* Compl. ¶¶ 105–23. Further, several courts have recognized that civil RICO claims, which Exist's civil conspiracy claims resemble, are triable by jury. *See Maersk*, 687 F. Supp. 2d at 340–41 (discussing cases). Lastly, Exist alleges that Tokio Marine violated New York General Business Law § 349 (deceptive acts and practices). For statutory causes of action, the Seventh Amendment applies where statutory rights "are analogous to common-law causes of action." *Granfinanciera, S.A.*, 492 U.S. at 42. Here, Section 349 "was designed to protect consumers from various forms of consumer fraud and deception," *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004) (citation omitted), and the Second Circuit has deemed Section 349 claims analogous to common-law fraud claims, *see, e.g.*, *Paradowski v. Champion Petfoods USA, Inc.*, No. 22 Civ. 962, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023). Given the

---

[6] Although a more scrutinizing analysis is required for some fraud actions, "[w]hen the only remedy sought is for damages, [as is the case here,] the fraud action is considered legal, and there is a jury trial right." Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2311 (4th ed. 2023).

parallels to common-law fraud and because the remedy sought is damages, this statutory claim is also legal in nature and entitles Exist to a trial by jury.

In *Fitzgerald v. U.S. Lines Co.*, the Supreme Court held that although "the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them. Nor does any statute of Congress or Rule of Procedure, Civil or Admiralty, forbid jury trials in maritime cases." 374 U.S. 16, 20 (1963) (citations omitted). The *Fitzgerald* decision "has come to stand for the following general rule: when admiralty claims are joined in an action with legal claims that normally carry the right to a jury trial, the court may properly submit *all* claims to a jury." *Maersk*, 687 F. Supp. 2d at 342 (emphasis in original).

In other words, "parties have no right to a non-jury trial on all of the issues in an admiralty case if considerations require otherwise." *In re Great Lakes Dredge & Dock Co.,* 895 F. Supp. at 611. *Fitzgerald*, therefore, "established that a litigant in admiralty is not entitled as a matter of right to a non-jury trial," *Red Star Towing & Transp. Co. v. "Ming Giant"*, 552 F. Supp. 367, 371 (S.D.N.Y. 1982), and "where the nonjury admiralty tradition and a plaintiff's jury right conflict, the jury right must prevail," *In re Complaint of Berkley Curtis Bay Co.,* 569 F. Supp. 1491, 1494 (S.D.N.Y. 1983). This is especially the case where claims are "based on one unitary set of circumstances" and "depend in large part upon the same evidence," as splitting the case between judge and jury has the potential to "unduly complicate[] and confuse[] a trial." *Fitzgerald,* 374 U.S. at 18–19.

Here, *Fitzgerald* and its progeny establish that Exist may submit all of its claims to a jury as the contract and tort claims arise from the same set of facts. Exist's claims all relate to the alleged mishandling of the insurance claims process following a flood at its warehouse and

10

possible tortious conduct that occurred during that process. Tokio Marine, therefore, has no right to a bench trial, and the proceedings would be unnecessarily complicated by a trial with multiple triers of facts.

## CONCLUSION

For the reasons stated above, Exist is entitled to a jury trial on all claims in this action.

By **February 5, 2024**, the parties shall submit their pre-motion letters for summary judgment.

SO ORDERED.

Dated: January 9, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge